**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | **Cause No. CR 25-72-GF-BMM** |
| Plaintiff, | |
| vs. | **ORDER** |
| CANDEN NICOLE WILKE, | |
| Defendant. | |

**INTRODUCTION**

Defendant Canden Nicole Wilke ("Wilke") filed a motion for compassionate release on March 30, 2026. (Doc. 41.) Wilke filed her motion for compassionate release *pro se*. (*Id*.) The Court appointed counsel and directed the Government to respond to Wilke's motion on or before April 10, 2026. (Doc. 42, Doc. 43.) The Government opposes Wilke's motion for compassionate release. (Doc. 45.) Wilke's counsel filed a reply to the Government's response. (Doc. 47.)

Wilke argues that her health problems, including congestive heart failure, scoliosis, hepatitis C, chronic headaches, chronic pain, cardiomegaly, dilated cardiomyopathy, nerve damage, high blood pressure, and seizure disorders, constitute extraordinary and compelling reasons for a sentence reduction. (Doc. 41

1

at 8-16; *see also* PSR ¶¶ 53-57.) Wilke additionally asserts that changes in her family circumstances constitute extraordinary and compelling reasons for compassionate release as Child and Protective Services have removed her children from their father's custody and the children may need to be placed in foster care. (Doc. 41 at 14.) The Government argues that Wilke's motion should be denied because "(1) she failed to exhaust administrative remedies; and (2) her pre-existing health conditions do not constitute 'extraordinary and compelling' reasons for her release." (Doc. 45 at 2.)

## FACTUAL BACKGROUND

Wilke pleaded guilty to one count of possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1), on September 16, 2025, with a formal plea agreement. (Doc. 30.) Pursuant to the plea agreement, counts 1, and 3, 4, and 5 were dismissed. (Doc. 38.) Wilke's offense level was 21 and her criminal history score placed her in category II. (Doc. 39.) The Court sentenced Wilke on November 13, 2025, to the custody of the Bureau of Prisons ("BOP") for 24 months with about four months of credit for pre-trial custody. (Doc. 38; Doc. 47 at 2.) Wilke was further sentenced to 4 years supervised release. (Doc. 38.)

Wilke has served approximately 9 months of her 2-year term of imprisonment. Wilke's projected release date is March 27, 2027. *See* Inmate Locator, https://www.bop.gov/inmateloc (accessed April 21, 2026). Wilke is listed as not yet

2

in BOP custody and is currently housed at the Nevada Southern Detention Center in

Pahrump, Nevada, awaiting transit to a BOP medical facility. *Id*.; Doc. 45 at 3.

**DISCUSSION**

**I.      Availability of Relief Under 18 U.S.C. § 3582**

The First Step Act amended the United States Code to "promote rehabilitation

of prisoners and unwind decades of mass incarceration." *United States v. Brown*,

411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558,

The First Step Act of 2018: An Overview 1 (2019)). The Court may modify a term

of imprisonment upon motion of a defendant if the Court finds that "extraordinary

and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) and whether the

reduction proves "consistent with applicable policy statements issued by the

Sentencing Commission" when the Court is considering the reduction of a

defendant's term of imprisonment. *Brown*, 411 F. Supp. 3d at 448 (citing 18 U.S.C.

§ 3582(c)(1)(A)).

Congress has not defined the circumstances that rise to the level of

"extraordinary and compelling," except to say that "[r]ehabilitation of the defendant

alone" is insufficient. 28 U.S.C. § 994(t); *Brown*, 411 F. Supp. 3d at 448. The law

instead directs the United States Sentencing Commission ("USSC") to issue a policy

statement describing "what should be considered extraordinary and compelling

reasons for sentence reduction, including the criteria to be applied and a list of

specific examples." 28 U.S.C. § 994(t); *United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021).

Section 1B1.13 of the United States Sentencing Guidelines ("USSG"), titled Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) ("Policy Statement"), previously only provided a policy statement for motions filed by the BOP director. Amendments to USSG § 1B1.13 took effect on November 1, 2023. "The amendment revises §1B1.13(a) to reflect that a defendant is now authorized to file a motion under 18 U.S.C. § 3582(c)(1)(A), making the policy statement applicable to both defendant-filed and BOP-filed motions." USSC, Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index, at 7, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf.

The amendments provide that:

Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

(1) Medical Circumstances of the Defendant.—

. . .

(B) The defendant is—
(i) suffering from a serious physical or medical condition,

(ii) suffering from a serious functional or cognitive impairment, or
(iii) experiencing deteriorating physical or mental health because of the aging process,

4

> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> . . .
>
> (5) Other Reasons.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).
>
> (6) Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

USSC, *Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index*, at 3.

The catchall "other reasons" provision reflects the USSC's belief that "guidance beyond that provided in the amended policy statement regarding what circumstances or combination of circumstances are sufficiently extraordinary and compelling to warrant a reduction in sentence is best provided by reviewing courts." (*Id.* at 10.) The "unusually long sentence" provision applies where there have been non-retroactive changes to the law. (*Id.*) This provision recognizes that "[o]ne of the

expressed purposes of section 3582(c)(1)(A) when it was enacted in 1984 was to provide a narrow avenue for judicial relief from unusually long sentences." (*Id.* at 11 (citing S. REP. NO. 98–225 (1983)). USSG § 1B1.13(b).

### A. Exhaustion of Remedies

It remains unclear whether Wilke appropriately has exhausted her administrative remedies as required before filing her motion for compassionate release. Wilke is not yet in BOP custody and could not follow the proper steps to file a request with the warden of her BOP facility. Wilke notified CoreCivic, the third-party contractor who runs the Southern Nevada Detention Center ("NSDC"), of her request. (Doc. 41 at 4.) CoreCivic responded that it is a third-party contractor for the U.S. Marshall Service and has no authority to approve or deny compassionate release requests for any inmate in their custody at NSDC. (*Id.* at 5.) CoreCivic directed Wilke to "follow-up with your attorney and submit your request to the USMS of your district or Judge directly." (*Id.*) CoreCivic denied Wilke's request for compassionate release on March 24, 2026. (*Id.*)

The Government argues that other courts have required that defendants who are in custody but have yet to be transferred to a BOP facility must notify the BOP so the BOP has notice of the request for relief, and they must otherwise attempt to exhaust administrative relief. (Doc. 45 at 9.) The Government cites *United States v. Dailey*, 2:13-CR-00118, 2020 WL 2195926 (E.D. California, May 6, 2020), which

concluded that a defendant who had been designated to a BOP facility but had not yet been transferred to the BOP facility had failed to exhaust administrative remedies when he failed to notify the BOP in any way of his efforts. *Dailey* cites *United States v. Gonzalez*, 451 F. Supp. 3d 1194 (E.D. Wash. 2020). The defendant in *Gonzalez* was in custody but had yet to be transferred to a BOP facility and did not know whether she had been designated to a BOP facility yet. 451 F. Supp. 3d at 1195. The defendant's counsel contacted the BOP to determine which office could process her compassionate release request. *Id*. The BOP "communicated that because [the] [d]efendant was not yet in a designated facility, there was no one able to process her request. The [BOP] employee indicated that the exhaustion of administrative appeals process was no[t] applicable or possible and suggested contacting the sentencing Court for relief." *Id*. at 1195-96. The court concluded that the defendant had sufficiently exhausted administrative remedies as any further efforts at that time "would be futile." *Id*. at 1196.

Similar reasoning applies in this case. Unlike *Dailey*, Wilke made "effort[s] to exhaust administrative remedies." 2020 WL 2195926 at *3. Wilke contacted the appropriate authorities at CoreCivic where she is currently housed at NSDC. CoreCivic did not advise Wilke to attempt to notify the BOP but rather suggested she and her counsel submit her request to the USMS or the Court. Wilke sufficiently exhausted the administrative remedies available to her and any additional efforts at

this time would prove futile.

## B. Reason for Reduction

### a. Medical Condition

Wilke is 41 years old. (PSR at 3.) Wilke has several significant health problems that the Court discussed with Wilke at her sentencing hearing. (Doc. 37.) Wilke was diagnosed with congestive heart failure in 2023. (PSR ¶ 53.) Wilke's heart problems are serious, and she may be a candidate for a heart transplant or a left ventricular assist device. (*Id*. ¶¶ 53-55.) Wilke's treatment has been partially obstructed, however, both by her incarceration and by her methamphetamine use. (*Id*.) Wilke was diagnosed with scoliosis in 2024 following a back surgery after a fracture injury. (*Id*. ¶ 53.) Wilke had a scheduled appointment in July 2025 to remove the surgically placed pins and screws from her back, but she was unable to attend the appointment due to her incarceration. (*Id*.) Wilke alleges that she now suffers from a bone infection and nerve pain due to the pins and screws in her back. (*Id*.)

Wilke also has a prosthetic right eye from a domestic assault that occurred in 2018-2019. (*Id*.) The prosthetic eye needs to be professionally cleaned every six to twelve months, but Wilke has not been able to get it cleaned for over 15 months due to her incarceration which has resulted in at least one infection. (Doc. 41 at 12-13.) Wilke also has a seizure disorder, anxiety, hepatitis C which she alleges she contracted at Cascade County Detention Center, chronic headaches and chronic pain,

and high blood pressure, among other ailments. (*Id*. at 8-16; PSR ¶ 57.) Wilke also had at least one suspected fentanyl overdose while in custody at Cascade County Detention Center for this offense. (PSR ¶ 56-57.)

Wilke relies on USSG §1B1.13(b)(1)(C) which provides that "extraordinary and compelling reasons exist" when the "defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." (Doc. 47 at 3-4.) It remains undisputed that Wilke suffers from a medical condition that requires long-term or specialized care. Wilke asserts that she is at risk of serious deterioration in health or death due to inadequate treatment in custody. The Government argues that the Court knew of Wilke's serious health problems at the time of sentencing and adjusted the judgment accordingly. (Doc. 45 at 10.) "The Sentencing Commission has stated, [however, that] 'an extraordinary and compelling reason *need not have been unforeseen* at the time of sentencing in order to warrant a reduction in the term of imprisonment.'" *United States v. Burke*, 2024 WL 3829969, at *21 (D. New Mexico) (citing USSG §1B1.13 (c)).

The Court concludes that Wilke's motion appears premature as it concerns her serious medical conditions. The Court expedited Wilke's sentencing hearing with the expectation that such expedited scheduling would ensure that Wilke arrived in BOP custody sooner. (Doc. 31.) BOP has greater medical resources and an

9

increased treatment capacity compared to CCDC. The Court is disappointed to learn about Wilke's long-wait for transfer into BOP custody, but determines that it cannot effectively evaluate whether BOP can provide the specialized medical care that Wilke needs, or whether Wilke's conditions will seriously deteriorate while in BOP custody. The Court informs Wilke that she may file a new request should her health conditions substantially deteriorate or should it become apparent that the BOP cannot effectively treat Wilke's health conditions. The Court finds that Wilke's health conditions do not at this time constitute an "extraordinary and compelling reason" to reduce her sentence at this time pursuant to 18 U.S.C. § 3582(c)(1)(A) and USSG §1B1.13(b)(1).

### b. Family Circumstances

Wilke also asserts that she should be released to care for her young children who were recently removed from their father's care by Child Protective Services. (Doc. 41 at 14-15.) Compassionate release may be based upon a need to care for a minor or disabled child if the only available caregiver is deceased or incapacitated. § 1B1.13(3)(A). Courts have previously rejected motions for compassionate release by defendants in similar circumstances. In *United States v. Rodriguez*, No. 3:21-CR-00334-DCN-4, 2023 WL 5720148 (D. Idaho Sept. 5, 2023), the defendant asserted that CPS had removed her children from their father's custody and first placed them with family before later placing them with a teacher. *Id*. at *4. The defendant asserted

10

that her children would be placed in foster care if she was not released to become their sole caregiver. *Id*. The court concluded that the defendant had "not provided any evidence to corroborate her assertions that her children need a primary caregiver or that they will be placed in foster care absent her release." *Id*. Similar allegations and facts exist here. Wilke has provided no evidence to corroborate her claims.

The *Rodriguez* court additionally reasoned that "even if [the defendant] had met her burden of proof to show the need to care for her children under subsection (C), she ha[d] still failed to show that she would be legally entitled to custody of her children if released." *Id*. The court cited the defendant's history of substance abuse and drug addiction. *Id*. The Government cites Wilke's similar struggles in this case and emphasizes that Wilke's substance already has impacted her children as they were present during several of her offenses. (Doc. 45 at 11.) The Court is not persuaded that Wilke "would be a suitable caregiver for her children" at this time, particularly given her serious medical problems. *Rodriguez*, 2023 WL 5720148, at *4. "Because [Wilke] has provided no evidence to support her assertions about the custody of her children, her custodial rights over them, or her suitability to serve as their primary caregiver, the Court does not find an extraordinary and compelling reason for release under the FSA based on her family circumstances." *Id*.

### c.  Wilke's Release Plan

Wilke asks the Court for a sentence reduction to one year of house arrest

followed by four years of supervised release. (Doc. 47 at 4.) Wilke asserts that if released, she would live in Harlem, Montana, with her grandmother, although she would prefer to move to Billings "when possible to be closer to [her] doctors." (Doc. 41 at 19.) Wilke argues that she would be able to access medical care through the Indian Health Service and Medicaid. (*Id*. at 22.)

### d. The 18 U.S.C. § 3553(a) factors

Wilke argues that, in light of her medical conditions and family circumstances, she has served a sentence that reflects the seriousness of her offense, promotes respect for the law, and fulfills the need for just punishment. (Doc. 47 at 4, citing 18 U.S.C. §3553(a)(1).) The Court finds that a 24-month term of imprisonment is just punishment for Wilke's offense and is necessary to assist in deterrence, to promote respect for the law, and to protect the public. The Court already varied downward from the low-end of the sentencing guidelines by about 58%. This downward departure was significant and reflected the seriousness of Wilke's drug trafficking on the Fort Belknap Indian Reservation in combination with her serious health concerns. The Court determines that a 24-month sentence remains appropriate under the §3553(a)(1) factors.

### CONCLUSION

The Court finds that Wilke's medical conditions do not at this time rise to the level of extraordinary and compelling circumstances warranting a sentence

reduction. Wilke suffers from serious health problems, however, her motion for compassionate release proves premature as she has not yet been transferred into BOP custody. The Court cannot adequately evaluate whether BOP, and particularly a BOP medical facility, can sufficiently treat Wilke's health conditions. The Court informs Wilke that she may file another motion for compassionate release should her health conditions seriously deteriorate, or should it become apparent that BOP cannot treat her health issues. The Court is troubled by the delay in getting Wilke to a BOP facility, particularly given the Court's expedited sentencing in this case, and requests diligence and urgency in designating and transferring Wilke to a BOP facility and ensuring adequate treatment upon arrival.

The Court recognizes the difficulty of Wilke's family's situation. The Court finds that Wilke has not demonstrated that the situation presents extraordinary and compelling circumstances warranting a sentence reduction. The Court agrees with the Government that the severity and seriousness of Wilke's crime warrant a 24-month sentence.

For these reasons, the Court will not reduce Wilke's sentence at this time. The Court suggests Wilke file a new request should new circumstances arise.

## ORDER

Accordingly, **IT IS ORDERED** that Wilke's motion for compassionate release (Doc. 41) is **DENIED.**

14

DATED this 22nd day of April, 2026.

Brian Morris, Chief District Judge
United States District Court

14